**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| TRACY RHINE,            )<br>          Plaintiff,      )<br>vs.                              )
| No.  3:14-CV-3055-M-BH |
|                                      )<br>**FIRST BAPTIST DALLAS**        )<br>**CHURCH, et al.,**                )<br>          Defendants.    ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this pro se *in forma pauperis* case has been automatically referred for full case management. Based on the relevant filings and applicable law, the case should be dismissed.

**I. BACKGROUND**

Tracy Rhine (Plaintiff) filed suit against First Baptist Dallas Church (First Baptist), Ron Criswell, Walter King, and Officer Seidat Cruz (Defendants) on August 26, 2014. (*See* docs. 3 at 1;[1] 10 at 16-22.[2]) She alleges violation of her civil rights under 42 U.S.C. § 1983 claim and several state law claims. (*See* docs. 3, 10.)

Plaintiff claims she is a "white female who is from a lower socio-economic class." (doc. 3 at 1.) On Sunday, August 26, 2012, she attended church at First Baptist as she did "every Sunday," although she was not a church member. (*Id.*) She observed an African American female panhandler and reported her to the head of security and a uniformed Dallas Police Officer who was working as security. (*Id.*) The head of security, Mr. King, was African American, and Officer Cruz was

---

[1]  Citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2]  Although some of the defendants are not identified by name in the complaint, Plaintiff identified them in her answers to a magistrate judge's questionnaire. (*See* doc. 10.) Her answers to the questionnaire constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

Hispanic. (*Id.*) Plaintiff also alleges that Mr. Criswell was the director of First Baptist, and that Officer Cruz and Mr. King "were acting on the authority and direction" of Mr. Criswell and the church. (*Id.*)

After she reported the panhandler, Plaintiff alleges that she was singled out in retaliation by Mr. King and Officer Cruz. (*Id.*) She "was followed and humiliated by [Officer Cruz] at the direction of [Mr. King]." (docs. 3 at 1; 10 at 20.) Additionally, Officer Cruz "ordered [Plaintiff] to relinquish her private property[, her bag,] or she could not attend church services," stating, "Hey you, you can't enter service with that bag," ordered her to hand over bag as she was entering the church service, and "snatched the bag away from [her] grasp and stalked off." (doc. 10 at 20-21.) Following the service, when she attempted to retrieve her bag, Plaintiff alleges that she was told by Mr. King not to return. (*Id.* at 20-21.) Since the incident, Plaintiff "suffered social anxiety and lost faith in fellowship." (doc. 3 at 1.) She also "fear[s] approaching churches and church members for fear of being shunned due to [her] being of a lower socio-economic back ground [sic]." (*Id.*) She seeks $100,000 in compensatory and special damages, and $200,000 in general and punitive damages from Defendants. (doc. 10 at 21.)

## II. PRELIMINARY SCREENING

Because Plaintiff has been permitted to proceed *in forma pauperis*, her complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). That statute provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id*.

### III.  SECTION 1983

Plaintiff sues Defendants under 42 U.S.C. § 1983 for violation of her First, Fourth, and Fourteenth Amendment Rights.  (docs. 3 at 1; 10 at 16-18.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.*  A plaintiff must allege facts that show (1) she has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

### A.    <u>Officer Cruz</u>

Federal courts within Texas have previously found "[a]n off-duty police officer employed as a private security guard [is] considered a 'state actor' for purposes of section 1983 liability." *Smith v. Machorro*, No. 3-07-CV-1547-BD, 2008 WL 656500, at *2 (N.D. Tex. Mar. 12, 2008)

3

(citing *Salazar v. Luty*, 761 F. Supp. 45, 47 (S.D. Tex. 1991)). "[P]olice involvement in support of legitimate private property rights *does not convert* a private property owner's actions into state action," however. *Sw. Cmty. Res., Inc. v. Simon Prop. Grp.*, 108 F. Supp. 2d 1239, 1250 (D.N.M. 2000) (emphasis added) (citing *Cape Cod Nursing Home Council v. Rambling Rose Rest Home*, 667 F.2d 238, 243 (1st Cir. 1981)). "[T]he First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on *state* action, not on action by the owner of private property used nondiscriminatorily for private purposes only." *Lloyd Corp. v. Tanner*, 407 U.S. 551, 567 (1971) (emphasis in original); *accord Petersen v. Talisman Sugar Corp.*, 478 F.2d 73, 81 (5th Cir. 1973); *Asociacion de Trabajadores Agricolas de Puerto Rico v. Green Giant Co.*, 518 F.2d 130, 135 (3rd Cir. 1975). "Private actors are typically not subject to its constraints, and owners of private property are generally permitted to exclude strangers without First Amendment limitations." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 419 (S.D.N.Y. 2013) (citing *Hudgens*, 424 U.S. at 513-21; *Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877, 879 (2d Cir. 2012) ("In the absence of any government nexus to the challenged action, however, the First Amendment does not prevent a property owner from restricting press access to private property.")).

As with the First and Fourteenth Amendments, a private party's search or seizure of property does not automatically violate the Fourth Amendment. *United States v. Shield*, 117 F.3d 322, 325 (7th Cir. 1997). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A "seizure" of property within the meaning of the Fourth Amendment occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (quoting *Jacobsen*, 466 U.S. at 113). "A search or seizure by a private party *does*

4

*not* implicate the Fourth Amendment," however, unless the private party is acting as an "instrument or agent" of the government. *Shield*, 117 F.3d at 325 (emphasis added) (citing *Walter v. United States*, 447 U.S. 649, 656 (1980); *Coolidge v. New Hampshire*, 403 U.S. 443, 487-90 (1971); *United States v. Jacobsen*, 466 U.S. 109, 118-22 (1984)); *United States v. Koenig*, 856 F.2d 843, 847 (7th Cir. 1988) (quoting *Coolidge*, 403 U.S. at 487). A federal circuit court addressing a private carrier's search of a package and Fourth Amendment violations considered "whether the government knew of and acquiesced in the intrusive conduct and whether the private party's purpose in conducting the search was to assist law enforcement agents or to further [its] own ends." *Koenig*, 856 F.2d at 847 (citation omitted).

Here, Plaintiff alleges that she is not a member of First Baptist, but an "invitee."[3] (docs. 3 at 1; 10 at 16.) She does not allege that the church met on public property, that she was excluded from public property, or that she was even excluded from church services on August 26, 2012. (docs. 3, 10.) She alleges that she was treated different from "other church goers" because she was "not dressed as nicely as other church goers" and was not a member of the church. (doc. 10 at 20.) She further alleges that because she was not a member of the church, Officer Cruz—who was working as security for the church—told her that she could not enter the church service with her bag. (docs. 3 at 1; 10 at 20-21.) Officer Cruz took Plaintiff's bag and then apparently allowed her to retrieve it after the service. (doc. 10 at 21.) Because she was on private property and she alleges that her treatment by Officer Cruz, as security for the church, was based on First Baptist's policies and her status as a non-member, Plaintiff has not alleged that she was deprived of a right secured

---

[3] An invitee is "[s]omeone who has an express or implied invitation to enter or use another's premises, such as a business visitor or a member of the public to whom the premises are held open." *Invitee*, BLACK'S LAW DICTIONARY (10th ed. 2014).

5

by the Constitution and the laws of the United States by a state actor. Accordingly, she fails to state a § 1983 claim upon which relief can be granted against Officer Cruz.

**B.      Private Parties**

Plaintiff also sues First Baptist and Messrs. Criswell and King. (doc. 10 at 16-17.)

In some circumstances, a private party may be acting "under color of state law" and held liable under § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). Additionally, a private party can be held to be a state actor under only three circumstances, (1) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (2) where the private party has exercised powers that are "traditionally the exclusive prerogative of the state," or (3) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the action of the private party must in law be deemed to be that of the state. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1981); *see also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357 (1974).

*1.     Mr. King*

Plaintiff argues that Mr. King is liable under § 1983 because he "conspired with [a] state actor to deprive [Plaintiff] of her legal rights" as follows:

> King conspired with state actor Seidat Cruz to harass Rhine in retaliation of Rhine's exercising of her First Amendment Rights by reporting illegal conduct on church property. Discriminated against Rhine for being of a different gender, race and socio-economic class. Discriminated against Rhine for not being a church member, illegally seized and searched Rhine's bag. Treated Rhine disparately from other non-church invitees. Violated Rhine's First Amendment Freedom of Religion when King told Rhine not to return to church because Rhine had asked for his name.

(doc. 10 at 6, 17-18.)

Private acts or conduct may result in liability under § 1983 if the private individual is a "willing participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). In order to establish a § 1983 cause of action based upon conspiracy, a plaintiff must show (1) that the defendants agreed to commit actions that violated a plaintiff's constitutional rights, and (2) that at least one of the defendants was a state actor. *Lewis v. Law-Yone*, 813 F. Supp. 1247, 1256 (N.D. Tex. Feb. 1993) (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)).

Although Plaintiff alleges that Mr. King violated her First Amendment rights, she fails to allege specific conduct that amounts to a violation under § 1983 for a private party. As noted, she failed to state a § 1983 claim against Officer Cruz, the individual with whom she alleges Mr. King conspired. Outside of the alleged conspiracy, Plaintiff does not allege that the head of security for First Baptist is a state actor within the meaning of § 1983, or any facts to support a finding that he acted under the color of state law. (*See* docs. 3, 10.) Any § 1983 claim against Mr. King should therefore be dismissed for failure to state a claim.

### *2.    First Baptist and Mr. Criswell*

Plaintiff does not allege that First Baptist and Mr. Criswell are state actors for the purposes for § 1983. (docs. 3 at 1; 10 at 2, 4) (Plaintiff affirmatively states that she is not claiming either First Baptist or Mr. Criswll were state actors). She also does not allege any facts to support a finding that they acted under color of law or conspired with a state actor. (*See* docs. 3, 10.) Accordingly, Plaintiff's § 1983 claims against First Baptist and Mr. Criswell should be dismissed for failure to

7

state a claim.[4]

### IV. STATE LAW CLAIMS

Plaintiff also alleges various state law claims. (*See* docs. 3, 10.)

Pursuant to § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. CIV.A.3:06–CV–879BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims. *Nagy v. George*, No. 3:07–CV–368–K, 2007 WL 2122175, at *10 (N.D. Tex. July 23, 2007), *aff'd*, 286 F. App'x 135 (5th Cir. 2008); *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).[5] Nonetheless, this rule is "neither mandatory nor absolute." *Smith*

---

[4] In her complaint, Plaintiff generally alleges that her Eighth Amendment rights were also violated. (doc. 3 at 1.) She does not appear to raise allegations related to the Eighth Amendment, however. (*See* doc. 10.) To the extent that she alleges an Eighth Amendment violation against any of the defendants, she fails to allege any conduct that relates to excessive bail, excessive fines, or cruel and unusual punishments. U.S. CONST. amend. VIII. Any such claim should therefore be dismissed for failure to state a claim.

[5] Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of state law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

8

*v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir.2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiff's right."). In determining whether to exercise supplemental jurisdiction, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257; *Nagy*, 2007 WL 2122175, at *10.

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims. They arise from the same "common nucleus of operative facts" as her federal claims and can be disposed of promptly. The Court should therefore exercise supplemental jurisdiction over it.

### A.     **Intentional Infliction of Emotional Distress**

Plaintiff alleges claims for intentional infliction of emotional distress against Officer Cruz and Mr. King. (doc. 10 at 17-18.)

Under Texas law, the elements to a infliction of emotional distress claim are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was severe. *Geske v. Bank of America Home Loans*, No. 3:11–CV–2220–M, 2011 WL 6968317, at *4 (N.D. Tex. Dec. 12, 2011), *adopted by* 2012 WL 75752 (N.D. Tex. Jan. 9, 2012) (citing *Tex. Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002)).

"Whether a defendant's conduct is 'extreme and outrageous' is a question of law." *Id*.

---

(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

9

(quoting *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001)). "The mere fact that a defendant's conduct is tortious or otherwise wrongful does not, standing alone, necessarily render it " 'extreme and outrageous.' " *Bradford*, 48 S.W.3d at 758. Extreme and outrageous behavior by the defendant must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id*. (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

Plaintiff fails to allege that the defendants' conduct was "extreme and outrageous," and instead appears to rely on her allegations that she was treated differently than church members, told she could not take her bag into the church service, and told not to return to the church. (*See* docs. 3, 10.) Because these allegations are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society," *Bradford*, 48 S.W.3d at 758 (citation omitted), Plaintiff's claim for intentional infliction of emotional distress should be dismissed for failure to state a claim.

B.   **Negligent Hiring, Training, and Supervision**

Plaintiff sues First Baptist and Mr. Criswell for negligent hiring, training, and supervision. (doc. 10 at 16-17.)

"To recover under a theory of negligent hiring, a plaintiff must prove that (1) the employer owed a legal duty to protect third parties from the employee's actions and (2) the third party's sustained damages were proximately caused by the employer's breach of that duty." *Gordon v. Bank of Am. Corp. & Green Tree Servicing*, LLC, No. 3:15-CV-902-L, 2015 WL 5872659, at *7 (N.D. Tex. Oct. 5, 2015) (quoting *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 901 (Tex. App.—Fort Worth 2007), *rev'd on other grounds*, 306 S.W.3d 230 (Tex. 2010)). To properly plead

10

a claim of negligent supervision, a plaintiff must allege that the defendant owed him or her a legal duty to supervise its employees, that it breached that duty, and that the breach proximately caused the plaintiff's injuries. *People's Choice Home Loan, Inc. v. Mora*, No. 306–CV–1709–G, 2007 WL 708872, at *7 (N.D. Tex. Mar. 7, 2007) (citing *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). In addition to proving negligence on the part of the employer in hiring, supervising, or training the employee, the plaintiff also must prove that the employee committed an actionable tort. *Id.* (citing *Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 384 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).

Plaintiff's complaint alleges "[v]icarious conduct" in that First Baptist and Mr. Criswell violated its duty of care to Plaintiff by "condoning employee Kings [sic] conduct and implementation of policy that allows *disparate treatment* of invitees from that of members."[6] (doc. 10 at 16-17) (emphasis added). Because Plaintiff failed to allege that the defendants' owed her a legal duty to treat her the same as church members, that they breached the duty, or that she sustained damages that were proximately caused by the employer's breach of the duty, *Gordon*, 2015 WL 5872659, at *7; *People's Choice Home Loan, Inc.*, 2007 WL 708872, at *7, Plaintiff's claim for negligent hiring, training, and supervision should be dismissed for failure to state a claim.

## C. Trespass to Chattel

Plaintiff sues Mr. King and Officer Cruz for trespass to chattel. (doc. 10 at 17-18.)

A trespass to chattels is a wrongful interference with or injury to property that causes actual

---

[6] Disparate treatment is defined as "[t]he practice, esp. in employment, of intentionally dealing with persons differently because of their race, sex, national origin, age, or disability." *Disparate Treatment*, BLACK'S LAW DICTIONARY (10th ed. 2014).

damage to the property or deprives the owner of its use for a substantial period of time.[7] *Texas Int'l Prop. Ass'n v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 592-93 (N.D. Tex. May 12, 2009) (citing *Armstrong v. Benavides*, 180 S.W.3d 359, 363 (Tex. App.—Dallas 2005, no pet. h.); *Omnibus Int'l, Inc. v. AT & T, Inc.*, 111 S.W.3d 818, 826 (Tex. App.—Dallas 2003, pet. granted, judgm't vacated w.r.m)). "For liability to attach, causing actual damage to the property or depriving the owner of its use for a substantial period must accompany the wrongful interference." *Omnibus Int'l, Inc.*, 111 S.W.3d at 826 (citing *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981)).

Here, Plaintiff alleges that she was "ordered to relinquish her private property or she could not attend church services," because she was not a church member. (doc. 10 at 20-21.) She also alleges that she "surrendered" her bag to Officer Cruz and attended the church service. (docs. 3 at 1; 10 at 20-21.) She also appears to allege that the bag was returned after she exited the church service. (*Id.*) She does not allege that the bag or any of its content were not promptly returned or that they sustained any damage. (*See id.*) Because Plaintiff does not allege that the interference was wrongful, the property was injured, or that she was deprived of ownership for a substantial period of time, *Omnibus Int'l, Inc.*, 111 S.W.3d at 826, she fails to state a claim.

**D.   Battery**

Plaintiff sues Officer Cruz for battery related to "snatching [her] bag out of her hand" before she entered the church service. (doc. 10 at 18.)

The elements of battery under Texas common law are (1) a harmful or offensive contact (2) with a plaintiff's person. *Jackson v. Texas Southern Univ.*, 997 F. Supp. 2d 613, 632 (S.D. Tex.

---

[7] Chattel is defined as "[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property." *Chattel*, BLACK'S LAW DICTIONARY (10th ed. 2014).

2014) (citing *Doe v. Beaumont I.S.D.*, 8 F. Supp. 2d 596, 616 (E.D. Tex. 1998)). Actual physical contact is not necessary to constitute a battery under Texas law, so long as there is "contact with clothing or an object closely identified with the body." *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 629 (Tex. 1967) (citations omitted).

> The interest in freedom from intentional and unpermitted contacts with the plaintiff's person is protected by an action for the tort commonly called battery. The protection extends to any part of the body, or to anything which is attached to it and practically identified with it. Thus contact with the plaintiff's clothing, or with a cane, a paper, or any other object held in his hand will be sufficient; * * * The plaintiff's interest in the integrity of his person includes all those things which are in contact or connected with it.

*Id.* (quoting WILLIAM L. PROSSER, PROSSER ON TORTS 32 (3d ed. 1964)). A battery requires the defendant to intend bodily *contact that is offensive*, however. *City of Watauga v. Gordon*, 434 S.W.3d 586, 590, 594 (Tex. 2014) ("As the saying goes, there is no such thing as a negligent battery, since battery is defined to require an intentional touching without consent not a negligent one.") (citation omitted). "Consent to contact 'negatives the wrongful element of the defendant's act, and prevents the existence of a tort.' " *Id.* at 591 (citation omitted); *see Smith v. Holley*, 827 S.W.2d 433, 437 n.3 (Tex. App.–San Antonio 1992, writ denied) ("[Consent] is not, strictly speaking, a privilege, or even a defense, but goes to negative the existence of any tort in the first instance. It is a fundamental principle of the common law that *volenti non fit injuria*—to one who is willing, no wrong is done.") (citation omitted).

As noted, Plaintiff alleges that she was "ordered to relinquish her private property or she could not attend church services" because she was not a church member. (doc. 10 at 20-21.) She also alleges that she "surrendered" her bag to Officer Cruz so she could attend the church service. (docs. 3 at 1; 10 at 20-21.) Because Plaintiff alleges that she was informed of the bag rule and

13

voluntarily "surrendered" her bag to Officer Cruz so she could enter the church service, she has not alleged sufficient facts to infer a plausible claim for intentional "harmful or offensive contact." *See Jackson*, 997 F. Supp. 2d at 632. As noted, a battery requires the defendant to intend *contact that is offensive*. *City of Watauga,* 434 S.W.3d at 594. Even if Officer Cruz "snatch[ed]" the bag from her hands, she consented to Officer Cruz's contact with the bag when she "surrendered" it to her. At best, she has alleged negligent battery. Accordingly, Plaintiff's claim for battery should be dismissed for failure to state a claim. *See id.* (noting "there is no such thing as a negligent battery").

## V. RECOMMENDATION

Plaintiff's claims should be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief may be granted.

**SIGNED** on this **4th day** of **October, 2016**.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE